STATE of Missouri, Plaintiff-Respondent,

v.

Richard Allen PAXTON,
Defendant-Appellant.

No. KCD 27777.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

James L. McMullin, Kansas City, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

Defendant was convicted of murder in the second degree and sentenced to fifteen years in prison. His sole point on this appeal is that he was denied a speedy trial under Section 545.890 et seq. RSMo 1969

and the Sixth Amendment of the United States Constitution and Art. 1, Section 18(a) of the Missouri Constitution. Defendant filed a motion to dismiss the charges on the basis of a denial of a speedy trial which was overruled. Procedurally, the claim of error in ruling the motion has been preserved.

The factual genesis of defendant's claim is as follows. On May 24, 1972, one Glen Dale Hyatt was found shot to death along a roadside in Benton County, Missouri. The defendant was arrested by the police on the same day at his home in Jackson County, Missouri. At the time of his arrest, defendant was 16 years of age, his birthdate being June 7, 1955. On June 12, 1972, a juvenile hearing was held in Benton County, Missouri. At this time defendant's attorney filed a motion alleging lack of jurisdiction by Benton County, because the defendant both resided and was arrested in Jackson County. The motion was overruled and the Juvenile Court of Benton County relinquished jurisdiction of the defendant and charges were preferred against him as an adult. Subsequently, defendant sought and obtained a writ of prohibition from the Missouri Court of Appeals, Kansas City District, which prohibited the Benton County Circuit Court from trying defendant as an adult for the reason that the Juvenile Court of Jackson County had exclusive jurisdiction over defendant, and the Juvenile Court of Benton County did not have jurisdiction pursuant to Section 211.071 RSMo 1969 to find that the child was not a proper person to be dealt with under the juvenile code.

On July 25, 1973, the juvenile officer in Jackson County, acting upon a juvenile petition filed in Jackson County, recommended that the juvenile proceedings be dismissed and juvenile court jurisdiction relinquished. A hearing was had before the juvenile judge on August 10, 1973, and continued until September 7, 1973, at which time the juvenile court relinquished jurisdiction. On December 21, 1973, the information upon which the defendant was tried was filed in the Circuit Court of Benton County. On January 18, 1974, defendant filed an application for disqualification and change of judge, which was granted; and on February 15, 1974, Judge H. A. Kelso of the 28th Judicial Circuit was assigned to hear said cause. Thereafter, on the 17th day of June, 1974, defendant filed a motion for change of venue, which was granted. The case was set for trial on the 4th day of December, 1974, in Vernon County, Missouri. On the 4th day of December, 1974, defendant filed a motion to dismiss for failure to grant defendant a speedy trial, which was overruled. Defendant waived his right to have a jury trial, and the court proceeded to hear the case. A timely motion for new trial was filed claiming error on the overruling of defendant's motion to dismiss. The defendant had been confined in the county jail for a period of two and one-half years.

Section 545.890 RSMo 1969, cited by defendant, has no application to Vernon County since the Circuit Court of Vernon County has three terms. Section 478.277 RSMo 1969. Any claim of discharge under Section 545.890 would have to be in the light of Section 545.920 RSMo 1969 which requires the passage of three full terms to raise the bar of the statute. *State v. Strong*, 484 S.W.2d 657, 660 (Mo.1972); *State v. Roach*, 480 S.W.2d 841 (Mo.1972). In any event, such three-term period is commenced only when charges are filed and the defendant is arrested or committed. It has no application to delay prior to filing charges. *State v. Barlish*, 421 S.W.2d 558 (Mo.App.1967); *State v. Farrar*, 206 Mo. App. 339, 227 S.W. 1078 (1921). Here, all postindictment delays were due to defendant's request, first for a change of judge and then for a change of venue.

Turning to the second branch of defendant's argument, that he was denied a right to a speedy trial under the provisions of the Sixth Amendment to the United States Constitution and Article One, Section 18(a) of the Missouri Constitution, a preliminary question must be resolved. Ordinarily, Sixth Amendment claims do not arise until after an indictment or charge is filed (*United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)); but

understandably, the pivotal issue with respect to a Sixth Amendment claim might also be the preindictment incarceration of the defendant. Thus, as stated in *Marion*, l.c. 320, 92 S.Ct. at 463, "[s]o viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Marion* specifically refused to extend the Sixth Amendment rights to the period prior to arrest, but certainly intended to include within the reach of the Sixth Amendment the period between arrest and charge. There seems no factual difference between the arrest of this defendant on charges under the Juvenile Code and the proceedings thereunder which culminated in the actual criminal charge for which he was convicted. Thus, defendant's claim of violation of a Sixth Amendment right is proper procedurally and should be considered as an attack upon his conviction based upon Sixth Amendment rights rather than a due process claim. In *State v. Gardner*, 534 S.W.2d 284, from the Missouri Court of Appeals, Springfield District, Filed February 25, 1976, the court there clearly recognized that the critical moment is arrest or indictment, whichever occurs first, for the purposes of measuring a loss of the Sixth Amendment right to a speedy trial.

However, defendant's claim, insofar as it is based on constitutional grounds, must also fail. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which involved a postarrest and postindictment trial delay of some five years, the United States Supreme Court refused to delineate a specific time period beyond which one's right to a speedy trial would be violated. Rather, the court adopted a balancing test and enumerated the following four factors which should be considered by a court in assessing a speedy trial claim. The four factors are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, supra, at 530, 92 S.Ct. at 2192.

In the light of the *Barker* criteria, it must be concluded no error occurred in overruling defendant's motion. The length of the delay between arrest and trial was approximately two and one-half years, which is substantial. The impact of the length factor is greatly meliorated by the reasons for the delay. It does not appear that the State deliberately attempted to delay trial in order to hamper the defense. Viewed in the light most favorable to the defendant, the worst that can be said is that the preindictment delay was due to confusion on the part of the State as to which juvenile court had original jurisdiction. However, defendant sought the writ of prohibition, the determination of which was the major cause of the preindictment delay. Postindictment delay, as has been noted, was due entirely to various motions by defendant. Without the additional delay imposed by the defendant's actions after charges were filed, the delay in reaching the stage of filing charges is not onerous. The defendant, though tardily, on the day of trial raised the issue of speedy trial.

The final factor to be considered is prejudice to the defendant. As is stated in *Barker*, "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, supra, at 532, 92 S.Ct. at 2193. The defendant herein was incarcerated prior to trial with the attendant anxiety and concern. The record, however, is bereft of any evidence that the accused's defense was impaired by the delay, nor does the accused make any such claim.

On balance then, the delay herein is not tantamount, either statutorily or constitutionally, to a denial of defendant's right to a speedy trial. Accordingly, the judgment of the trial court is affirmed.

All concur.